IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LANEY CHIROPRACTIC AND SPORTS | § | |
| THERAPY, P.A. | § | |
| | § | |
| VS. | § | CIVIL NO.4:15-CV-135-Y |
| | § | |
| NATIONWIDE MUTUAL INSURANCE | § | |
| COMPANY | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the motion for summary judgment of Laney Chiropractic and Sport Therapy, P.A.("Laney Chiropractic") (doc. 9), and the cross-motion for summary judgment of Nationwide Mutual Insurance Company ("Nationwide")(doc. 12). After review of the motions, related briefs, and applicable law, the Court DENIES Laney Chiropractic's motion for summary judgment and GRANTS Nationwide's cross-motion.

## I.   FACTUAL BACKGROUND

Laney Chiropractic purchased several insurance policies from Nationwide. The present lawsuit involves whether Nationwide owes Laney Chiropractic a duty to defend in a underlying lawsuit filed against it in Colorado. To determine if Nationwide owes such a duty, the Court must look to the allegations in the underlying complaint.[1]

---

[1] The Court makes no determination as to the accuracy of the facts or allegations in the underlying action. The Court must decide whether there is a duty to defend "without regard to the truth of the allegations in the complaint," because even a baseless claim can give rise to a duty to defend. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).

In November 2014, ART Corporate Solutions, Inc. ("ARTCS"), and Active Release Techniques, LLC ("the LLC")(collectively "the ART Companies"), filed a complaint against Daryl Laney, D.C. ("Dr. Laney"); Dr. Laney's professional association, Laney Chiropractic; and Neuormuscular Corporate Solutions, LLC ("NCS"),[2] in the United States District Court for the District of Colorado.   In this underlying action, the ART Companies allege the following claims for relief against Laney Chiropractic: (1) Federal Trademark Infringement, (2) False and/or Misleading Advertising, (3) Deceptive Business Practices, (4) Unfair Competition, (5) Breach of Contract, and (6) Breach of Duty of Good Faith and Fair Dealing.

A.    The Art Companies

According to the underlying complaint, Dr. Michael Leahy began developing a soft-tissue massage technique that in 1985 he named Active Release Techniques ("ART").   Dr. Leahy formed the LLC as a vehicle to profit from training other practitioners to perform ART. ART is a patented, state-of-the-art, soft-tissue-system/movement-based massage technique that treats problems with muscles, tendons, ligaments, fascia, and nerves.   ART is a method for using an expert-system protocol to treat patients, and there are over 500 protocols that are unique to ART.   The expert system, which utilizes the over 500 protocols, is protected by at least three different patents. The LLC also holds several federally registered trademarks, which

---

[2] Laney Chiropractic is the only plaintiff in the present action.

include "ACTIVE RELEASE TECHNIQUES" and "ART."   Only providers who have taken an approved ART course, become certified, and are maintaining their certifications, are permitted to use the trademarks ART and ACTIVE RELEASE TECHNIQUES, and then only for limited purposes. Certified ART providers may only employ ART in approved settings, with prior approval from the LLC.

In the early 2000s, the ART Companies began contracting with businesses to have certified ART providers offer on-site care to the businesses' employees.  These contracts were serviced only by providers in the LLC's Elite Provider Network ("EPN"), which consisted of the LLC's most-qualified providers.  Each EPN provider entered into an EPN Participating Provider Agreement with ARTCS.

In 2002, the ART Companies retained Xtomic, LLC ("Xtomic"), to create custom software and provide database development, management, and updates. Xtomic created a software application, commonly referred to as "the EPN Program," which is a web-based application used to manage communications with the ART Companies' customers and the EPN providers.  The EPN Program is integral to the ART Companies' business and provides a competitive advantage because it stores and transmits all patient information, patient notes, time-sheets, invoices, reports, etc., making communication seamless between all parties involved.  The ART Companies keep the source code for the EPN Program confidential and do not provide copies of the source code to third parties.  According to the ART Companies,

the source code of the EPN Program is a trade secret.

B.    Laney's Involvement with ART

In October 2004, Dr. Laney, acting as an independent contractor, began performing on-site ART services to one of the ART Companies' clients, Sabre, Inc., pursuant to an agreement. In April 2005, Dr. Laney entered into a participating-provider agreement with ARTCS[3] to become an ART EPN provider. From February 2009 to June 2011, he performed, as an ART EPN provider, on-site services for another ART Companies customer, Atmos Energy, until Atmos terminated its contract with that company. After that termination, Dr. Laney continued to provide on-site services for Atmos for his own account.

C.    Dr. Laney's Competing Business

In September 2011, Dr. Laney formed a competing business, NCS, that began promoting and advertising that NCS provided on-site ART services to businesses and corporations. The ART Companies allege that NCS's promotion, advertisement, and provision of the same services as ARTCS is a violation of their contract with Dr. Laney. NCS's website includes a link called "Employee Portal," which takes one to a new screen containing the logo for "Atmos Energy." Clicking on the "Atmos Energy" logo sends the user to a separate website that contains a log-in screen for the NCS Program, which the ART Companies allege is a copy of their EPN program.

The ART Companies allege that without the ART Companies'

_____

[3] Dr. Laney originally entered into the agreement with another one of the ART Companies' entities, ART EPN, but the agreement was later assigned to ARTCS.

knowledge or authorization Xtomic copied for Dr. Laney and NCS the EPN Program, which is the ART Companies' trade secret.  Until late July 2014, both NCS and Laney Chiropractic's websites contained numerous references to ART, including an entire tab on each website devoted to ART, including how it works and the conditions it treats. Sometime after September 2014, both NCS and Laney Chiropractic replaced references to ART with "soft tissue techniques" or "STT" on their websites. The ART Companies also claim that the source code for Laney Chiropractic's website, including the terms "Active Release Technique" and "soft tissue therapy," is likely to cause confusion because the descriptions are of ART's patented treatment method and because Laney Chiropractic is not authorized to provide ART services or use the ART Companies' patented treatment methods. The ART Companies insist that Laney Chiropractic has no authority to use any of the ART Companies' trademarks nor authority to represent to its clients or potential clients that it can provide ART services.

D.   Nationwide's Coverage and Denial of Claim

From May 2009 to May 2015, Nationwide issued insurance policies to Laney Chiropractic, which included business-owners liability coverage ("CGL"), excess follow-form liability insurance (Coverage A), and umbrella liability insurance (Coverage B).  Under the policies, Nationwide owes Laney Chiropractic a duty to defend if a third party sues Laney Chiropractic for: a "personal or advertising

injury; . . . the use of another's advertising idea in your 'advertisement'; or [i]nfringing upon another's copyright, trade dress or slogan in 'advertisement'." The policies specifically exclude coverage, however, for **trademark-infringement** claims.[4]

In November 2014, Laney Chiropractic sent notice to Nationwide that it had been sued by the ART Companies in federal court in Colorado. Nationwide responded, denying a duty to defend the underlying lawsuit. As a result, Laney Chiropractic filed suit in state court seeking declaratory relief against Nationwide, and Nationwide then removed the case to this Court, asserting diversity jurisdiction. The parties have filed cross-motions for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)(citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[4] See Unopposed Mot. for Leave to Am. Summ. J. Evid. (doc. 22), Exs. A-D. ("Nationwide's App.")

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions, etc.), or (b) show either that (1) the plaintiff cannot produce admissible evidence to support that particular fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1). To demonstrate that a particular fact cannot be genuinely in dispute, a plaintiff movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions, etc.), and (b) if the defendant has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1). Although the Court is **required** to consider only the cited materials, it **may** consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

In evaluating whether summary judgment is appropriate, the

Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010)(citation omitted)(internal quotation marks omitted). "After the non-movant has been given the opportunity to raise a  genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III. DISCUSSION AND ANALYSIS

A.   Duty-to-Defend Standard

The sole issue before the Court is whether Nationwide owes a duty to defend Laney Chiropractic in the underlying action. In this diversity case, Texas law governs whether Nationwide owes such a duty and this Court must decide this case as would the Texas Supreme Court. *See James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014)(citation omitted).   Texas courts follow "the eight-corners rule" to determine an insurer's duty to defend in an underlying action. *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014)(citing *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012). "Under [this] rule, courts look to the facts alleged within the four corners of the pleadings, measure them against the language within the four corners

of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy." *Id.; see also King v. Dallas Fire Ins. Co.*, 855 S.W.3d 185, 187 (Tex. 2002). "Courts may not, however, (1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios that might trigger coverage." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. Tex. 2008)(quoting *Guar. Nat'l Ins. Co. v. Azrock Indus.*, 211 F.3d 239, 243 (5th Cir. 2000). It is the factual allegations, not the legal theories, that control. *Fed. Ins. Co. v. Ace Prop. & Cas. Co.*, 429 F.3d 120, 125 (5th Cir. 2005) (citing *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141). An insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy. *King*, 85 S.W.3d at 187.

Nevertheless, a court "may draw inferences from the [pleadings] that may lead to a finding of coverage." *Gore Design Completions, Ltd.*, 538 F.3d at 369 (internal citation omitted). "The factual allegations are considered without regard to their truth or falsity and all doubts regarding the duty to defend are resolved in the insured's favor." *Ewing Constr. Co.*, 420 S.W.3d at 33 (citing *Zurich Am. Ins. Co.*, 268 S.W.3d at 491). Even if the underlying complaint only "potentially includes a covered claim, the insurer must defend the entire suit." *Zurich Am. Ins. Co.*, 268 S.W.3d at 491.

The initial burden lies, however, with the insured to establish

coverage under the policy. *Ewing Constr. Co.*, 420 S.W.3d at 33.  If the insurer relies on a policy exclusion to deny coverage, the burden shifts to the insurer to prove that the exclusion applies. *Guar. Nat'l Ins. Co. v. Vic. Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998)(internal citations omitted).  If the insurer then proves an exclusion, the burden shifts back to the insured to show that an exception to the exclusion prevails. *Id*.

B.   Summary of Arguments

Laney Chiropractic asserts that Nationwide owes it a duty to defend because the ART Companies alleged in their underlying complaint that Laney Chiropractic inflicted against the ART Companies personal and advertising injury, as defined in the policies.  Alternatively, Laney Chiropractic contends that, although trademark infringement is excluded from coverage, the ART Companies' allegations go beyond trademark infringement and potentially fall within the covered categories of using another's advertising idea and infringing, in advertisement,  upon another's copyright, trade dress, or slogan.

According to Laney Chiropractic, the claims in the complaint at the very least trigger potential coverage because the ART Companies allege that Laney Chiropractic has promoted and advertised itself as providing the same services as ARTCS.  Laney Chiropractic further contends that because the ART Companies allege that Laney Chiropractic's replacement of "ART" with "STT" or "Soft Tissue

Technique" on its website is false and/or misleading, and because none of these allegedly advertised terms or descriptions by Laney Chiropractic include the trademarks "ART" or "Active Release Techniques," the only infringement the ART Companies could be alleging is trade-dress infringement and slogan infringement.

Laney Chiropractic further characterizes its own conduct that might constitute trademark infringement as actually infringing on "ART's advertising ideas," noting that the underlying complaint alleges that Laney Chiropractic promoted and advertised itself as providing the same services as ARTCS. Laney Chiropractic concludes that all of these alleged facts raise a potential for a covered claim, and that they require Nationwide to defend. Laney Chiropractic suggests that its conclusion is supported by the inclusion of these fact allegations in causes of action other than those titled "Trademark Infringement."

Diametrically, Nationwide contends that the underlying action alleges mere trademark infringement and does not allege copyright, trade dress, or slogan infringement in advertisement, relieving it of a duty to defend. Nationwide further insists that the underlying action does not allege the use of another's advertising idea because the use of the ART Companies' trademark, patented massage method, and trade secret is distinct from an advertising plan or scheme to promote ART. Thus, Nationwide concludes that the underlying complaint fails to allege the misuse of any advertising idea that is

unique to the ART Companies.

C.   Personal and Advertising Injury

The insurance policies define "personal and advertising injury" as

follows:

> **14. "Personal and advertising injury"** means injury,
> including consequential "bodily injury", arising out of
> one or more of the following offenses;
>
>         *     *     *
>
> f.   The use of another's advertising idea in your
> "advertisement;" or
>
> g. Infringing upon another's copyright, trade dress or
> slogan in your "advertisement."

(Nationwide's App. (doc. 22)). The policies define"advertisement"

in the CGL coverage as follows:

> 1.   **"Advertisement"** means a notice that is broadcast or
> published to the general public or specific market
> segments about your goods, products or services for the
> purpose of attracting customers or supporters. For the
> purposes of this definition:
>
> a.   Notices that are published include material placed
> on the Internet or on similar electronic means of
> communication; and
> b.   Regarding websites, only that part of a website
> that is about your goods, products or services for the
> purposes of attracting customers or supporters is
> considered an advertisement.

"Advertising idea," however, is not defined in the policies.  When

a term is not defined in a policy, it should be given its ordinary

and plain meaning unless the policy shows the word was meant in a

different sense. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire*

*Ins. Co. of Pittsburgh*, 99 F.3d 695, 700 (5th Cir. 1996) (citation

omitted).  The Texas Supreme Court has interpreted "advertising" as a "'marketing device[] designed to induce the public to patronize' a particular establishment." *Sport Supply Gr., Inc. v. Colum. Cas. Co.*, 335 F.3d 453, 462 (5th Cir. 2003)(citing *Smith v. Baldwin*, 611 S.W.2d 611, 614-15 (Tex. 1980)).  One Texas court also suggested that "'advertising' is a 'public notice drawing attention to' the attributes of a business." *Id.* (citing *First State Bank v. Keilman*, 851 S.W.2d 914, 922 (Tex.App.—Austin 1993, writ denied).

The crux of Laney Chiropractic's argument is that its alleged conduct in the underlying action amounts to the "use of advertising ideas" and is potentially covered by the policies.  The United States Court of Appeals for the Fifth Circuit addressed a similar contention in *Sport Supply*, but held that "the definition of advertising does not include trademarks; therefore, trademark infringement claims do not involve misappropriation of advertising ideas." *Id.* at 464-65; *see also Am.'s Recommended Mailers Inc. v. Md. Cas. Co.*, 339 F. App'x 467, 469 (5th Cir. 2009) (acknowledging that the Fifth Circuit has already spoken on this issue).

The facts in the present case are remarkably similar to the facts in *Sport Supply*, except that Laney Chiropractic has acknowledged that trademark-infringement claims are excluded under the policies.  To escape that exclusion, it attempts to re-characterize the allegations that appear in the underlying complaint and, in support, it cites several cases outside the Fifth

Circuit construing a particular trademark infringement as a misappropriation of advertising ideas.

Laney Chiropractic is correct that other courts have taken a broader approach to trademark infringement in connection with advertising injury. And even the Fifth Circuit has stated that "infringement of another['s] trademark could constitute the misappropriation of an advertising idea if the idea for the trademark could be deemed an advertising idea . . . but only if [the] trademark qualifies as advertising." *Sport Supply, Inc.*, 335 F.3d at 462 (internal quotation marks omitted). However, "Texas law does not appear to view a trademark as a marketing device . . . and has adopted a more conventional understanding of a trademark as a label that serves primarily to identify and distinguish products." *Id.* at 464-65. Consequently, and after careful review of the ART Companies' factual allegations in their underlying complaint, the Court concludes that the  complaint does not state a claim for misappropriation of advertising ideas, which would have been covered by the policies, but rather merely states a claim for trademark infringement, which the policies exclude from coverage. *See id.* at 458 (citing *Scottsdale Ins. Co. v. Tex. Sec. Concepts & Investigation*, 173 F.3d 941, 943 (5th Cir. 1999)(applying Texas law).

D.   Copyright, Trade Dress, and Slogan Infringement

As mentioned previously, the insurance policies cover

infringement--in advertisement--of copyright, trade dress or slogan. To support its position that the ART Companies' complaint asserts copyright--not trademark--infringement, Laney Chiropractic cites language in 17 U.S.C. § 102(a), which provides that "copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression." But Laney Chiropractic does not give any rationale or cite any case law supporting its position that the underlying complaint alleges copyright infringement. Instead, to support its copyright-infringement argument, Laney Chiropractic inexplicably relies on language from the second claim for relief in the underlying complaint, which does not name Laney Chiropractic as a defendant. Specifically, it begs that the second claim's language, "the NCS program was copied from the EPN program and this program was the ART Companies trade secret," alleges a copyright-infringement claim.  It does not. It plainly asserts a trade-secret claim. Trade-secret claims are specifically excluded from coverage by the policy. (*See* Nationwide's App. (doc. 22).)

Next, Laney Chiropractic argues that the ART Companies have alleged trade-dress and slogan infringement. To support its argument, Laney Chiropractic cites the ART Companies' underlying complaint alleging (1) Laney Chiropractic's use, on its website, of the words or phrases "soft-tissue techniques," "FDM encompasses more than 500-techniques," and "Active Release Techniques protocols"; (2) inclusion in Laney Chiropractic's website of video  testimonials

that only discuss ART treatments; and (3) replacement by Laney Chiropractic on its websites of "ART" with "STT" or "Soft-Tissue Techniques."   Laney Chiropractic contends that none of these descriptions includes the alleged trademarks "ART" or "Active Release Techniques," and that thus the ART Companies are proceeding in the underlying suit only under a trade-dress or slogan-infringement claim.  Besides, it insists, these allegations are included under causes of action not titled or described as "trademark infringement."  According to Laney Chiropractic, these allegations invoke policy coverage, especially since these terms are not defined in the policies to show how they are distinguishable from trademark.   Laney Chiropractic further argues that the historical distinctions between "trade dress" and "trademark" have gradually disappeared over the past century.

Conversely, Nationwide argues that the underlying complaint does not state a claim for trade-dress infringement.  To address Laney Chiropractic's argument that the underlying complaint actually alleges trade-dress or slogan infringement--not trademark infringement--the Court will again look to case law from the Fifth Circuit.

In *Test Masters Educational Services, Inc. v. State Farm Lloyds*, 791 F.3d 561 (5th Cir. 2015), the policy in question, like the present one, excluded trademark claims, but provided for coverage for an "advertising injury . . . arising out of . . .

infringing upon another's copyright, trade dress, or slogan in your advertisement."  Also, as in the present case, the central question became: "what is trade dress?"

The Court of Appeals answered that "trade dress" is distinct from a "trademark" or a "service mark" and "trade dress protection is generally focused more broadly than trademark protection." *Id*. at 564-65 (citation omitted).  Under the Lanham Act, a "trademark" and a "service mark" include any word, name, symbol, or device used  to identify  and  distinguish  goods  or  services,  respectively.  *Id*. (citing 15 U.S.C. § 1127). A "trade name" means any name used by a person to identify his business. *Id*. It follows, then, that "ART" and "Active Release Techniques" are both trade names, as well as service marks. *See id*.

The Lanham Act does not specifically define "trade dress"; however, the courts have filled that gap.  Trade dress "refers to the total image and overall appearance of a product and may include features such as  the  size,  shape,  color,  color  combinations, textures, graphics, and even sales techniques[,] that characterize a particular product" and connote a particular producer. *Id*. Under the Lanham Act, an unregistered trade dress may be protectable under section 43(a) if it is distinctive and nonfunctional.  To allege a trade-dress claim, the plaintiff must identify the discrete elements of the trade dress that it wishes to protect and show that: (1) the trade dress is protectable, meaning it is inherently distinctive or

has acquired secondary meaning; (2) the products are nonfunctional; and (3) the defendant's products create a likelihood of confusion. *See Lady Primrose's, Inc. v. After Hours Bath Prods., Inc.*, 211 F.3d 125, 126 (5th Cir. 2000)(per curiam)(citations omitted).

Like Laney Chiropractic here, the coverage-seeker in *Test Masters* alleged that he was accused of using a confusingly similar website, and that that could be the basis of a trade-dress infringement claim. *Test Masters Educ. Servs., Inc.*, 791 F.3d at 566. The Fifth Circuit reasoned, however, that an allegation that a particular website is "confusingly similar" is not sufficient to trigger coverage because consumer confusion is an element of **both** a trademark and a trade-dress infringement claim. *Id.* (emphasis added). "[T]he central focus in this coverage dispute . . . is not on the confusion, but on what is allegedly causing the confusion." *Id*.

If Laney Chiropractic's website is "confusingly similar," it is because Laney Chiropractic is using the ART Companies' trademarked material on its website, leading a consumer to potentially believe that Laney Chiropractic is an authorized EPN provider and thus authorized to use ART's patented techniques. Like in *Test Masters*, the underlying complaint fails to allege "trade dress" as a claim for relief. As a result, Laney Chiropractic's trade-dress argument fails.

Lastly, Laney Chiropractic argues that the underlying complaint

alleges slogan infringement when it complains of Laney Chiropractic's employing in its advertising the phrases "soft tissue techniques," "soft tissue therapy," "FDM encompasses more than 500 techniques," "fascial distortion model," and "Active Release Technique protocols," which Laney Chiropractic claims are slogans that constitute attention-getting devices. Nationwide contends that these phrases are not slogans but mere descriptions of the treatments offered by the ART Companies. The insurance policies do not define the term "slogan," so the Court will look to case law for a definition. This time, however, the Court must look outside the Fifth Circuit for guidance.

Failure to define a term will not render an insurance policy ambiguous because it is possible that an established custom or a body of law can fill in the gaps left by drafters. *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 617. According to the Western District of Missouri, a "slogan" is a brief, attention-getting phrase used in advertising or promotion. *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 773 F. Supp. 2d 799, 814 (W.D. Mo. 2011), *aff'd*, 686 F.3d 539 (8th Cir. 2012). The Sixth Circuit has defined the term "slogan" as a "distinctive cry, phrase, or motto of any party, group, manufacturer, or person; catchword or catch phrase." *See Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F.3d 546, 556 (6th Cir. 2003); *see also Hugo Boss Fashions*, 252 F.3d at 618-19 (noting that "words or phrases that

convey secondary meaning constitute slogans.").

To support its slogan-infringement argument, Laney Chiropractic cites *Cincinnati Insurance Company v. Zen Design Group, Ltd.*, 329 F.3d 546 (6th Cir. 2003). In *Cincinnati*, the insurer's duty to defend in an underlying action involved the potential infringement of a competitor's trademarked phrase, "The Wearable Light," and whether this phrase could arguably be considered a slogan. *Id.* at 548. Under the policy at issue in that case, coverage for slogan infringement was excluded. Zen, the insured, argued the only relevant issues in the determination of slogan infringement are: (1) whether ownership of the slogan is alleged in the underlying complaint, and (2) whether use of the slogan infringes on the complainant's rights. *Id.* at 555. Further, Zen argued "that even if the *Hugo Boss* definition for trademarked slogans is applicable, the phrase 'The Wearable Light' meets its requirements."[5] *Id.* The Sixth Circuit agreed, reasoning that "ASP's assertions of ownership over the phrase "The Wearable Light" together with Zen's alleged use of the same phrase in connection with its LED flashlights are arguably allegations of slogan infringement." *Id.* at 557. While this Court agrees with the Sixth Circuit's holding in *Cincinnati*, the alleged uses of slogans in the present case are more closely aligned with *Hugo Boss*.

---

[5] In *Hugo Boss*, the Court stated that "trademarked slogans are phrases used to promote or advertise a house mark or product mark, in contradistinction to the house or product mark itself." 252 F.3d at 618.

All of these cases have two common themes: a trademarked title or a trademarked slogan. As previously established, trademarked slogans promote house or product names, but are not the house or product name itself. *Hugo Boss*, 252 F.3d at 618.  Each time the courts use the term "trademarked slogan," however, the term implies ownership of the slogan, noting it has been federally registered and is something separate from the company name. For example, "Nike asserts JUST DO IT is its slogan, not the name of its business," and the slogan is trademarked. *Interstate Bakeries Corp.*, 773 F.Supp.2d at 815 (citation omitted). Similarly, American Express developed an advertising campaign that featured the slogan, "DON'T LEAVE HOME WITHOUT IT." *Am. Express Co. v. CFK, Inc.*, 947 F. Supp. 310, 312 (E.D. Mich. 1996).  In each of these instances, a slogan became a "catch phrase" apart from the name of the company that owned the trademarked slogan.

Nowhere in the underlying complaint do the ART Companies purport to allege slogan infringement.  Furthermore, the ART Companies never claim to have trademarked the phrases "soft tissue techniques," "soft tissue therapy," "fascial distortion model" or "more than 500 techniques."  Instead, the ART Companies allege that the "soft tissue techniques" are synonymous with their "Active Release Techniques," in which the actual techniques are patent protected, and the name, itself, is a federally registered trademark. (Laney's App. (doc. 11) 31.) In fact, the underlying

complaint states that "STT or Soft Tissue Technique . . . is false and/or misleading because the descriptions are of ART's patented expert system and treatment method." (*Id.*) Consequently, the Court concludes that "ART," "Active Release Techniques," "Soft Tissue Techniques," "more than 500 techniques," and other phrases associated with "ART" and "Active Release Techniques" are not slogans that invoke coverage under the policies.

E. Exclusions

The following are the pertinent policy provisions (under CGL coverage) that Nationwide asserts to justify its denial of coverage in the underlying action:

> **2.    EXCLUSIONS**
>
> This insurance, including any duty we have to defend "suits", does not apply to personal and advertising injury:
>
> **f.      Breach of Contract**
> Arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement".
>
> *    *    *
>
> **i.    Infringement of Copyright, Patent, Trademark, or Trade Secret**
> Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."
> HOWEVER, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(Nationwide's App. (doc. 22).)

Under Texas law, insurance policies are subject to the rules of contract interpretation. *Progressive Cty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). When a contract, as written, can be given "a definite or certain legal meaning, then it is unambiguous as a matter of law" and the court will enforce it as written. *Id.*(citation omitted). A court will not find a contract ambiguous "merely because the parties advance conflicting interpretations." *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998). When construing unambiguous instruments, a court gives "[the instrument's] terms their plain, ordinary, and generally accepted meaning. . . ." *Id.* (citation omitted). Courts must also attempt to give effect to all contract provisions so that none will be rendered meaningless. *Id.* (citations omitted).

As Nationwide argues in the present case, there are a number of exclusions in the policies that potentially exclude coverage for the causes of action alleged against Laney Chiropractic. Under Texas law, "when an exclusion prevents coverage for injuries 'arising out of' particular conduct, '[a] claim need only bear an incidental relationship to the described conduct for the exclusion to apply.'" *Sport Supply Grp., Inc.*, 335 F.3d at 458 (quoting *Scottsdale Ins. Co.*, 173 F.3d at 943).

At the very least, the allegations in the underlying complaint incidentally arise out of trademark infringement, misappropriation of trade secrets, or breach of contract, all of which are excluded

under the insurance policy.   Laney Chiropractic argues there is coverage potential for its use of the ART Companies' advertising ideas because the underlying complaint contains fact allegations made under the heading "Trademark Infringement" that are also included under other headings such as, "False and/or Misleading Advertising," "Deceptive Business Practices," and "Unfair Competition" (Laney's Br. (doc. 10) 7.) The Court disagrees.  Under the headings "False and/or Misleading Advertising" and "Deceptive Business Practices," the underlying complaint alleges:

> The Defendants promote and advertise their FDM services on their website **through the use of the ART Trademark Materials**.

> The Defendants are not authorized to advertise or perform ART services.

> The Defendants' **use of the ART Trademark Materials to advertise** their FDM services is deceptively misdescriptive and/or false.

(Laney's App. (doc. 11) 34-36, ¶¶ 69-71,75-77.)(emphasis added). Under the "Unfair Competition" heading, the underlying complaint states "the Defendants['] actions described above are likely to deceive the public and therefore constitute unfair competition. . . ." The fact allegations under the heading "Unfair Competition" are clearly referencing **actions** under the headings "False and/or Misleading Advertising" and "Deceptive Business Practices," both of which are arising out of trademark infringement.  As Nationwide points out, claims arising out of trademark infringement are excluded. Once Nationwide successfully relied on a policy exclusion

to deny coverage to Laney Chiropractic, the burden became Laney Chiropractic's to demonstrate that an exception to those exclusions apply. *See Guaranty Nat'l Ins. Co.*, 143 F.3d at 193 (citations omitted). Laney Chiropractic has failed to meet its burden. As a result, Laney Chiropractic's motion for summary judgment is denied.

## IV.   CONCLUSION

Based on the foregoing, the Court DENIES Laney Chiropractic's motion for summary judgment (doc. 9) and GRANTS Nationwide's cross-motion for summary judgment (doc. 12), declaring Nationwide owes no duty to defend Laney Chiropractic in the underlying action.

SIGNED July 20, 2016.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE